UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PLC CORP., | ) | CASE NO. 1:13 CV 2421 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| BRANDYWINE RECOVERY INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

This matter comes before the Court upon the Motion of Plaintiff PLC Corp. ("PLC") for partial summary judgment on Count 1 for breach of contract (ECF #31) and the motion of Defendants Frederick and Dorothy Mraz for Summary Judgment on all claims asserted against them.[1] (ECF #32) For the reasons that follow, Plaintiff's Motion for Summary Judgment on Count 1 is granted in part and denied in part and the Motion of Mr. and Mrs. Mraz for summary judgment is granted in part and denied in part.

## FACTUAL BACKGROUND

PLC filed this action against Brandywine Recovery Inc., Frederick Mraz, sole shareholder of Brandywine and his wife, Dorothy Mraz on October 30, 2013, asserting claims of breach of contract, fraud and negligent misrepresentation. Mr. Mraz is the President and sole stockholder and director of Brandywine, and the only person authorized to bind the company. F. Mraz Aff., ¶1(ECF #35) Dorothy Mraz occasionally acted as a non-executive, part-time

---

[1]Also pending are Plaintiff's motion to strike Defendants' reply memorandum in support of their motion for summary judgment for filing the reply 3 days out of rule (ECF #46) and Defendants' motion to strike all references to the deposition testimony of Mr. Mraz, which he contends was given in connection with settlement discussions. (ECF #42) The Court has reviewed the filings of the parties with respect to both motions, finds no prejudice to any party on either motion and hereby denies both motions.

bookkeeper for the Company with no managerial duties or responsibilities and was never authorized to bind the Company. (F.Mraz Aff., ¶2) At least as of the date of Mr. Mraz's affidavit, Brandywine remains a valid Delaware Corporation. Id. ¶4.

This case arises out of a long-term business relationship between Hukill Chemical Corporation, doing business as Hukill Environmental Services ("Hukill") and Brandywine.  In 1996 or 1997, Hukill and Brandywine entered into an oral contract for chemical recycling services (the "Agreement").  Brandywine, through Frederick Mraz, as President of Brandywine, engaged the services of Hukill to recycle certain chemical products for reuse by Brandywine's customers.  Over the years, as the business relationship continued, Brandywine would become delinquent in payment for Hukill's services and the accounts receivable for Brandywine would range from thirty to ninety days outstanding.  However, Brandywine would continue to make payments on the debt and Hukill continued to process orders for Brandywine's customers.  The last payment Hukill received from Brandywine was on April 15, 2013.

In the fall of 2013, Hukill sent Brandywine an Account Receivable Trial Balance with additional language and signature lines typed onto the last page of the account.  On October 29, 2013, Mr. Mraz signed the Account Receivable Trial Balance acknowledging Brandywine's debt of $412,410.78 and returned it to Hukill.  The Account Receivable Trial Balance indicates that the customer is Brandywine Recovery Inc.  Under the balance due on the last page, Hukill typed the following:

> The signers below acknowledge the debt of $412,410.78, represented by the invoices and their respective unpaid amounts listed on the above two pages, that is owed by them to Hukill Chemical Corporation as of this date, September 11, 2013.
>
> The signers below also acknowledge and accept that Hukill Chemical

>Corporation will charge an annual interest rate of 8% (eight percent) on the unpaid balance of the above listed invoices beginning September 11, 2013.

(Ex. B to Aff. Of James Hukill, ECF #31-2)  There was also another paragraph that was crossed out by Mr. Mraz.  The document contains a date line and three signature lines–the first for Brandywine Recovery, Inc., the second for Frederick P. Mraz and the third, which was crossed out by Mr. Mraz, for Dorothy C. Mraz.  Mr. Mraz signed the document on the line above his name.  He did not sign the line for Brandywine Recovery, Inc. In his return email, Mr. Mraz explained his adjustments to the statement noting that he removed Dorothy's name "since she is only a part-time employee, not an officer of the company, so her signature carries no weight" and "removed the vague statement about legal fees for collections." (Ex. A to Aff. of James Hukill, (ECF #31-2)   Defendants asserts that there were some issues with Hukill's performance and that on more than one occasion, Hukill produced material that was ultimately determined not to meet a client's specifications.  These failings were discussed with Hukill representatives on multiple occasions. Defendants also note an occurrence where Brandywine paid for material to be shipped from its client in Puerto Rico to Hukill and back only to learn that Hukill had not met the client's specifications.  Brandywine states that in 2013, Hukill began selling the products they were recycling for Brandywine directly to Brandywine's customers and never credited Brandywine's accounts for the funds it received from Brandywine's clients.  Mr. Mraz states that he signed the Account Receivable Trial Balance despite these difficulties because he believed that Brandywine and Hukill could continue to have a solid working relationship.

    At about the same time as the Account Receivable Trial Balance was signed, the owners of Hukill Chemical Company were in the process of selling the company to a third party buyer.

However, the third party buyer would not purchase Brandywine's Accounts Receivable and the third party buyer assigned the Brandywine Account Receivable to PLC Corp. The principals of PLC include Robert Hukill, James Hukill and John Hukill. (Complaint, ¶1)

Plaintiff moves for summary judgment on its breach of contract claim against all three defendants. The individual defendants move for summary judgment on all claims asserted against them. The motions are fully briefed and ready for decision.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56©). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d

4

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

  Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

  Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred

with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Fed. R. Civ. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining

6

whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## DISCUSSION

**A. Breach of Contract**

Moving first to Plaintiff's breach of contract claim, Plaintiff asserts that it has proven the existence of a binding contract because there is no dispute that Defendants entered into an Agreement with Hukill to recycle products for Brandywine to resell to third-parties in exchange for monetary payment. Plaintiff cites to Defendants' answer to support these assertions. While Plaintiff refers to "defendants" in the complaint and throughout its motion for summary judgment, the Answer specifically admits a business relationship and agreement only between Hukill and Brandywine and the individual defendants deny that they ever individually contracted with Hukill for services or agreed to pay Hukill for services. See ECF #17 at ¶12-14. Moreover, all of the documentary evidence submitted by the parties shows that the business relationship was between the two companies–that Hukill provided services to Brandywine, that it billed Brandywine and extended credit to Brandywine. The invoices and account statements all refer to Brandywine. There is no evidence that there was any ongoing agreement between Hukill and the individual defendants. The communications between the companies were obviously handled by individuals on behalf of the companies. As such, based on the course of conduct between the parties and the these documents, Plaintiff has only established the existence of a contract between Hukill and Brandywine.

The only evidence of any obligation of the individual defendants for personal liability on

Brandywine's account is the signed Account Receivable Trial Balance. After Brandywine fell behind on its payments and in fact stopped making payments to Hukill in April 2013, Hukill sent Brandywine's Account Receivable Trial Balance to Mr. Mraz with the additional typed paragraphs and signature lines for Brandywine and Frederick Mraz and Dorothy Mraz.  Plaintiff notes that the additional typed paragraphs refer to the "signers below" acknowledge the debt of $412,410.78 as represented by the invoices that is owed "by them" to Hukill as of September 11, 2013 and that "the signers" acknowledge and accept that Hukill will charge interest on the unpaid balance.  Mr. Mraz signed on the line above his name.  In transmitting the Account Receivable Trial Balance back to Hukill he refers to the attached acknowledgment of  "our outstanding debt" to Hukill.  While the use of the word "our" could include the company and the individuals, that interpretation is negated by Mr. Mraz' next statement that he removed Dorothy Mraz's name because she was not an officer of the company and thus could not bind the company.[2]  This supports Mr. Mraz' contention that he executed the document while acting as President of Brandywine and did not intend to acknowledge personal liability for the company's debts.  F.Mraz Aff. at ¶16.   If he thought they were acknowledging personal responsibility for the debt, it would not matter if Dorothy was an officer of Brandywine. Mr. Mraz signed the Account Receivable Trial Balance on only one line, the line above his name.  He asserts that he mistakenly signed the wrong line.  He did not sign the line above Brandywine Recovery.  If Mr. Mraz were acknowledging a debt owed by the company and both individuals or even of the company and himself, he should have signed on both lines.

---

[2]As Mrs. Mraz did not sign the Account Receivable Trial Balance and there is no other prior evidence that she personally engaged Hukill's services or owed Hukill for any services, Mrs. Mraz is entitled to summary judgment on Plaintiff's  breach of contract claim.

8

Plaintiff counters that under Ohio law, "if a corporate officer executes an agreement in a way that indicates personal liability, then that officer is personally liable regardless of his intention." *Spicer v. James*, 21 Ohio App.3d 222, 223 (2d Dist. 1985) In *Spicer*, two corporate officers each signed a lease agreement twice for the lease of space for their corporation.  The officers first signed the lease without any corporate designation after their names.  The officers wrote their corporate title after the second set of signatures . The tenant on the lease agreement was the corporation and the language of the lease agreement was in the singular and referred only to the tenant or the corporation.  The Court stated that "[w]hether a corporate officer is personally liable upon a contract depends upon the form of the promise and the form of the signature." *Id*.  Thus, the Court determined based upon the lack of corporate designation after the first set of signatures, along with the fact that the officers each signed the lease twice, that the officers signed the lease agreement in a dual capacity and assessed individual liability against each officer.

*Spicer* is distinguishable from the case before this Court.  Mr. Mraz did not sign the Account Receivable Trial Balance in two places in a dual capacity.  Moreover, the lease agreement in *Spicer* was the entire agreement between the parties.  In this case, the course of conduct and the business dealings were solely between Hukill and Brandywine over a number of years.  Hukill provided services to Brandywine and billed Brandywine for those services.  There is no evidence that Mr. Mraz ever paid any of those invoices personally or that Hukill ever billed or sought payment from Mr. Mraz over the course of their business relationship.  The Accounts Receivable Trial Balance at issue is a print out of the balance owed by Brandywine on its account with Hukill. Nothing in the invoices and course of conduct between the companies

suggests that Mr. or Mrs. Mraz were personally liable for any of the invoices sent to Brandywine by Hukill.  Thus, Mr. Mraz argues that Plaintiff has attempted to turn the Accounts Receivable Trial Balance into a guarantee agreement for Brandywine's debt. Mr. Mraz contends that the Accounts Receivable Trial Balance is insufficient to constitute a guarantee agreement under Ohio law because the language of a guarantee "must be clear that one is assuming responsibility" for the debt of another and that "it is insufficient for plaintiff merely to intend to bind defendant, such an intention must be clearly manifested." *Scherers Comm., Inc., v. National Media Mkt'ing, Inc*., 1994 WL 129912, *2 (Ohio Ct. App. Apr. 14, 1994).  Further, Mr. Mraz asserts that the guarantee also fails for lack of consideration.  Plaintiff's response to this argument is that the Accounts Receivable Trial Balance is not a new contract between the parties for which consideration is necessary.  Rather, it is a written acknowledgment, akin to an admission by a party opponent, of a debt owed to Plaintiff by Brandywine and Frederick Mraz.

    Plaintiff's argument is negated by the record in this case.  The evidence shows that the business agreement was between Hukill and Brandywine and that the debt was owed by Brandywine.  There is no evidence prior to the Account Receivable Trial Balance that the debt was owed by both Brandywine and Mr. Mraz.  As such, the only way that Mr. Mraz would be individually liable on Brandywine's debt is if the signed Account Receivable Trial Balance constitutes a guarantee.   In order to create a guarantee on a debt, "the language must be clear that one is assuming responsibility." *Scherers Communications, Inc. v. Natl. Media Marketing, Inc*. (Apr. 14, 1994), 10th Dist. No. 93APE09–1254, 1994 WL 129912, *2.  Thus, the word "guarantee" or " guarantor" appears in any contract in which a guarantor assumes liability for the debt of another.  It is not clear from the words typed onto the Account Receivable Trial Balance

that the document was intended to be a guarantee or that it was asking Frederick or Dorothy Mraz to act as guarantors of Brandywine's debt.  Moreover, there is no indication that there was any consideration for any new contract of guaranty.  As such the writing added to Brandywine's account receivable trial balance is insufficient to form a guaranty contract. Rather, the Account Receivable Trial Balance is an acknowledgment of the amount of Brandywine's debt to Hukill. It is insufficient to support personal liability of Mr. Mraz for Brandywine's debt.  Consequently, Mr. Mraz is entitled to summary judgment on Plaintiff's breach of contract claim.[3]

As to Plaintiff's breach of contract claim against Brandywine, there is no dispute that Brandywine and Hukill had a business and contractual relationship and that Mr. Mraz, as president of Brandywine, acknowledged Brandywine's debt to Hukill in the amount of $412,410.78.  Defendants now dispute the amount owed to Hukill, stating that Brandywine is entitled to set-off the amount it owes due to some of Hukill's failures that occurred prior to signing the Account Receivable Trial Balance.  However, Mr. Mraz states that he shared these issues contemporaneously with representatives of Hukill when they occurred and did not attempt to negotiate a setoff when he signed the Account Receivable Trial Balance. Thus, Hukill should be permitted to rely on Brandywine's acknowledgment of the debt, including the specific amount listed, based on Mr. Mraz's signature, without any reservation of right for some purported setoff, on the Account Receivable Trial Balance. Accordingly, Plaintiff's motion for summary judgment on its breach of contract claim is granted as to Brandywine in the amount of $412,410.78, plus

---

[3]Plaintiff does not ask the Court to pierce the corporate veil to hold Mr. Mraz liable for Brandywine's debt.  In any event, there is no evidence before the Court that corporate formalities were not observed by the defendants or that Mr. Mraz used the corporate entity for criminal or fraudulent purposes.

8% interest per annum.

**B. Fraud and Negligent Misrepresentation**

Defendants Frederick and Dorothy Mraz seek summary judgment on Plaintiff's tort claims of fraud and negligent misrepresentation. In its Complaint, Plaintiff's claims for fraud and negligent misrepresentation are based upon the same alleged conduct of Mr. Mraz, "acting in his capacity as an authorized agent of Defendant Brandywine Recovery Inc." .[4] Complaint, ¶¶ 29, 40. Both claims are based on representations made by Mr. Mraz in his capacity as an authorized agent of Brandywine, between January 2013 and October 8, 2013, that payment would be made on Brandywine's account receivable balance and that there was no cause for concern regarding payment. Based upon these misrepresentations, which Plaintiff claims were made intentionally and fraudulently, Hukill continued to process orders for Brandywine's customers. Complaint, ¶¶ 29-49 and Brandywine's account receivable balance grew larger. Brandywine continued to make payments to Hukill through April 15, 2013.[5]

Here payment in exchange for services performed was already required by the Agreement between Hukill and Brandywine and the damages Plaintiff appears to be is seeking

---

[4]The fraud and negligent misrepresentation claims as stated in the Complaint are based solely upon the conduct of Mr. Mraz. No mention is made of Mrs. Mraz in either count. In its briefing on this issue, Plaintiff points to one email from Mrs. Mraz over a Brandywine signature block, sent to someone at Hukill in January, 2013 in which she states "We finally received a partial payment last night from TAPI. Attached is a copy of a check processed today. We have been promised more payments and will pass them on to you as soon as we receive them. Thank you for your patience!

[5]While a plaintiff may allege in the alternative both fraud and negligent misrepresentation, a defendant cannot be found to have committed an act both intentionally and negligently. If fraud is proved, then the claim of negligent misrepresentation is necessarily subsumed thereby. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 249, 684 N.E.2d 1261 (Ohio Ct. App. 1996).

12

from the alleged fraud and/or the negligent misrepresentation is payment for the services performed pursuant to the Agreement. While the gist of the tort claims is that Hukill would not have continued to perform work for Brandywine's account without the allegedly false assurances of payment from Mr. Mraz, ultimately all of the money owed as a result of Hukill's work for Brandywine is included in the breach of contract claim.

The first issue that arises when a plaintiff asserts a fraud claim, or any other tort claim, based upon the same conduct which constitutes a breach of contract is overcoming the prohibition against turning a breach of contract claim into a tort claim.[6] Under Ohio law, "the existence of a contract action excludes the opportunity to present the same case as a tort." *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). The reason for this rule is simple: where parties have reached an agreement, "protection for economic losses should arise under the bargained-for-contract." *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F.Supp.2d 834, 839 (S.D. Ohio 2013) citing *Middleton v. Rogers Ltd., Inc.*, 804 F.Supp.2d 632, 639 (S.D. Ohio 2011). "The motive of the breaching party is irrelevant to a contract action." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E. 2d 1261, 1270 (Ohio Ct. App. 1996). See *Ketcham v. Miller*, 104 Ohio St. 372 (1922) (A party may not transform a breach of contract claim into a tort claim by simply alleging that the opposing party intentionally, wantonly or maliciously failed to perform its contractual duties.)

Notwithstanding the economic loss rule noted above, Ohio courts have held that fraudulent inducement claims, based on a party's intent not to perform their terms at the time of

---

[6]While Defendants raised this in their affirmative defenses, they do not address it in their motion for summary judgment on the tort claims. However, as it is an obvious issue the Court must raise it *sua sponte*.

contracting may be viable.[7] *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 774 (N.D. Ohio 2004). Ohio courts have also recognized the tort of negligent misrepresentation as an exception to the economic loss rule. *Universal Contracting Corp. v. Aug*, 2004 WL 3015325 at *3 (Dec. 30, 2004, Ohio Ct. App.)

Under Ohio law, "a claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation.... A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the [agreement] or other wrongful conduct induced a party to enter into the [agreement] ." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502–3, 692 N.E.2d 574 (1998). To establish a claim for fraudulent inducement (or fraud generally) plaintiff must establish all of the following: (1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance. *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir.2007) (citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 462 N.E.2d 407 (1984)). Additionally, "fraud damages [must] be limited to the injury actually arising from the fraud. The tort injury must be unique and separate from any injury resulting from a breach of contract." *Medical Billing, Inc. v. Medical*

---

[7]While Plaintiff's Complaint asserts a claim entitled "fraud," in its opposition to Defendants' motion for summary judgment, Plaintiff sets out the elements of fraud in the inducement. Further, while the parties had a long standing business Agreement which preceded the alleged fraudulent misrepresentations, Plaintiff asserts that the misrepresentations made from January -October 2013 induced Plaintiff to continue providing services under the parties' Agreement.

*Mgmt. Sciences, Inc.*, 212 F.3d 332, 338 (6th Cir.2000). While recovery of purely economic loss is permissible with a fraudulent inducement claim, a plaintiff must seek to " to recover damages apart from the mere loss of the bargain reached for a specified payment." *Marine Direct v. Dougherty Marine, Inc.*, 2007 WL 81842 at *2 (Jan. 8, 2007 S.D. Ohio)  A plaintiff may not directly recover the amount owed under the contract based upon a tort theory–the plaintiff would only be able to recover other damages proximately caused by the fraud.[8] See also *Medical Billing, Inc. v. Medical Management Sciences, Inc.*, 212 F.3d 332 , 338 (6th Cir. 2000) (any award of damages arising from fraudulent inducement claim must be separate and distinct from the damages awarded on claim for breach of the contract)

      The tort of negligent misrepresentation as recognized under Ohio law provides  " 'one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for economic loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." ' *Delman v. Cleveland Heights* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, quoting 3 Restatement of the Law 2d, Torts (1965) 126–127, Section 552. As is the case with asserting a fraud in the inducement claim arising from a breach of contract, a plaintiff who asserts a claim of negligent misrepresentation with a breach of contract claim, must show injury and damages arising from conduct other than the breach of a contractual obligation.

---

[8]As the parties have not addressed plaintiff's alleged damages for its tort claims, the Court must permit Plaintiff to establish any damages it suffered as a result of its justifiable reliance on any fraudulent or negligent misrepresentation that is separate and distinct from the damages already awarded for the breach of contract.

As one Ohio court noted:

> [w]hile by its terms the tort of negligent misrepresentation applies to 'one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information,' permitting a party who has a contractually defined right to recover economic damages to proceed in a separate action against a corporate officer who has provided false information would similarly undermine the ability of the parties to allocate risks and duties by contract. While an injured party may proceed in the alternative, raising breach of contract and negligent misrepresentation against both an officer and the corporation in an action naming both as defendants, the existence of a recovery for the breach of contract 'excludes the opportunity to present the same case as a tort claim.'

*Universal Contracting Corp. v. Aug*, 2004 WL 3015325 (December 30, 2004 Ohio Ct. App.) citing *Textron Financial Corp. v. Nationwide Mutual Insurance Co.*, 115 Ohio App.3d at 151, 684 N.E.2d 1261.

Plaintiff asserts that several text messages from Mr. Mraz, deposition testimony from Mr. Mraz and one email from Mrs. Mraz supports its contention that Mr. Mraz's promises of payment were empty when made because even after Brandywine received money from TAPI or other funding sources and could have fulfilled the promises of payment, payment was not made to Hukill–"demonstrating a lack of intent when the promises were made throughout that summer to perform". (ECF #40 at 7) Mr. Mraz argues that these documents do not support any argument that his promises of payment were made with the intent not to make the payments. He states that payments were made on the Brandywine account receivable balance, along with payments to other creditors of Brandywine and that until October 2013 he had an expectation that Brandywine was going to receive money to enable it to make payment to Hukill. Whether the evidence shows that Mr. Mraz had a present intention not to perform any promises at the time such promises were made presents a question of fact for a jury.

16

Finally, there is no evidence that Mrs. Mraz had any ability to bind the Company sufficient to permit justifiable reliance on any promise of payment she made.  Moreover, the only evidence of any communication by Mrs. Mraz was an email in January 2013.  Brandywine made payments to Hukill for months following that email and there is no evidence to indicate that she had any intention not to perform any promise.  She is not mentioned at all in Counts two and three of the Complaint where Plaintiff asserts claims of fraud and negligent misrepresentation based upon statements made by Mr. Mraz.  Accordingly, Mrs. Mraz is entitled to summary judgment on Plaintiff's claims of fraud and negligent misrepresentation.  Defendants' motion for summary judgment on Counts two and three is denied as to Mr. Mraz.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Partial Motion for Summary Judgment on Count One for Breach of Contract (ECF #31) is granted as to Brandywine Recovery Inc. in the amount of $412,410.78 plus 8% interest per annum beginning September 11, 2013.  Plaintiff's motion for summary judgment is denied as to the individual defendants.  The Motion of Frederick P. Mraz and Dorothy C. Mraz for Summary Judgment (ECF #32) is granted as to all claims asserted against Dorothy Mraz and as to Frederick Mraz on Count One for Breach of Contract.  The motion is denied as to Frederick Mraz on Counts Two and Three for Fraud and Negligent Misrepresentation.

Trial on the remaining claims is set on October 19, 2015 at 8:30 a.m.  A trial order to issue.

IT IS SO ORDERED.

                              */s/Donald C. Nugent*  
                              DONALD C. NUGENT  
                              UNITED STATES DISTRICT JUDGE

DATED:   October 6, 2015

18